OPINION
Appellant, Tayla Nickell, appeals a decision of the Warren County Court of Common Pleas, Juvenile Division, granting permanent custody of her son, Levi Marsh, to Warren County Children Services Board. We affirm the decision of the trial court.
Appellant is the biological mother of Levi Marsh, who was born on August 26, 1999. He was conceived during appellant's marriage to Curtis Nickell; however, Curtis died before Levi's birth. Appellant maintained that Levi was not Curtis' child, but alleged instead that either Gerald Glossip or Marlon Hill was Levi's biological father. Paternity testing excluded Glossip as Levi's father, and Hill, although properly served with notice of the proceedings, failed to appear or submit to paternity testing.
Warren County Children Services Board ("WCCSB") received temporary custody of Levi on May 19, 2000, after an emergency shelter care hearing. Appellant had left for Florida several weeks earlier, leaving Levi in the care of Cathy Smith, his maternal grandmother. Smith had no way to reach appellant in Florida. When appellant did not return after a month, Smith asked Levi's maternal grandfather and stepgrandmother, Tom and Kimberly Marsh, to care for Levi. They contacted WCCSB which, upon gaining temporary custody of Levi, placed him in their care. Levi was adjudicated a dependent child on July 10, 2000. Levi's placement with the Marshs was continued at that time.
A case plan was journalized on July 28, 2000. The case plan required appellant to undergo a drug and alcohol abuse assessment, as well as a psychological assessment. The case plan required her to maintain stable housing and employment. It also required her to complete various programs, such as parenting classes, the HomeWorks program, and Mother's Group. She was also given the opportunity to visit with Levi regularly. On October 4, 2001, WCCSB filed a motion for permanent custody of Levi. WCCSB alleged that he had been in WCCSB's custody for 12 of the last 22 months, that he could not and should not be placed with appellant within a reasonable time, and that it was in his best interest for the state to be awarded permanent custody.
On January 30, 2002, the trial court held a hearing on the motion for permanent custody. The evidence adduced at trial indicated that appellant failed to make any progress on the case plan requirements. She attended only one parenting class, leaving nine to complete. She did not begin the HomeWorks program or complete either of the required evaluations. She only sporadically visited Levi, in spite of being granted weekly visitation, and at the time of the permanent custody hearing, had not had any contact with him for more than a year. In addition, appellant had been in and out of jail for various offenses. In September 2001 she began serving a six-month prison sentence for a probation violation related to a theft offense. Appellant admitted to previous drug and alcohol abuse, but claimed to have completed NA and AA programs while serving her prison term. In a written decision journalized February 2, 2002, the trial court granted the motion for permanent custody.
Appellant now appeals, raising a single assignment of error:
 "THE TRIAL COURT ERRED IN GRANTING THE MOTION FOR PERMANENT CUSTODY AS THE MANIFEST WEIGHT OF THE EVIDENCE DID NOT SHOW BY CLER [SIC] AND CONVINCING EVIDENCE THAT TO GRANT SAID MOTION WOULD BE IN THE BEST INTEREST OF THE CHILD."
Natural parents have a constitutionally protected liberty interest in the care and custody of their children. Santosky v. Kramer (1982),455 U.S. 745, 102 S.Ct. 1388. A motion by the state for permanent custody seeks not merely to infringe that fundamental liberty interest, but to end it. Id. at 759, 102 S.Ct. at 1397. In order to satisfy due process, the state is required to prove by clear and convincing evidence that the statutory standards have been met. Id. at 769,102 S.Ct. at 1403. Clear and convincing evidence requires that the proof produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
Before granting permanent custody of a child to the state, the trial court is required to make specific statutory findings. The reviewing court must determine whether the trial court followed the statutory factors in making its decision or abused its discretion by deviating from the statutory factors. In re William S., 75 Ohio St.3d 95,1996-Ohio-182.
When a state agency moves for permanent custody, the trial court is required, in part, to determine "if it is in the best interest of the child to permanently terminate parental rights and grant permanent custody to the agency that filed the motion." R.C. 2151.414(A)(1). In making this best interest determination, the trial court must consider all relevant factors, including but not limited to the following factors enumerated in R.C. 2151.414(D):
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
Upon examination of the record, we find that the trial court's determination that it is in the best interest of Levi to be permanently placed in the custody of WCCSB is supported by clear and convincing evidence.
Appellant testified that she had failed to complete the case plan requirements. She could offer little explanation for her failure to comply with the requirements, except that she was on drugs, unable to seek help, and suffered from a debilitating illness which in part, discouraged her from attempting to complete the case plan requirements. She testified that she suffers from transnervemelitis, an inflammation of the spinal cord, which can cause temporary paralysis of her legs. In addition, she testified that her incarceration has prevented her from completing some of her case plan requirements, although she acknowledged that she had not made any effort to complete the requirements prior to her incarceration.
Appellant's mother, Cathy Smith, testified that appellant is presently incapable of caring for Levi. While she hoped that Levi could maintain contact with appellant, she testified that it would be in his best interest to remain with the Marshs.
Both foster parents testified that Levi is doing well in their care, and that they would like to adopt him. Tom Marsh testified that Levi has a strong bond with him, his wife and his fourteen-year-old stepdaughter. Likewise, Kim Marsh testified that Levi has bonded well with her family. She testified that Levi suffers from seizures, requiring close monitoring. However, since Levi has been in their care, the seizures have been controlled through medication. She also testified that it had been more than a year since appellant had visited Levi.
Nathan Elter, the child's guardian ad litem, stated at the permanent custody hearing that it was in Levi's best interest to grant permanent custody to WCCSB. Elter concluded that the prospect of appellant having the ability to adequately parent Levi was too speculative and distant to warrant any other conclusion. He noted the lack of a strong bond between appellant and Levi. Elter further noted that appellant had not even attempted to register for required case plan services. In concluding that it was in Levi's best interest that permanent custody be granted to WCCSB, he expressed great concern about appellant's ability to successfully complete the required case plan services given her history of criminal offenses, drug abuse, and failure to participate in case plan services.
Andrea Mansack, an assistant supervisor with WCCSB, supervised the caseworker who was assigned to appellant. Mansack assumed responsibility for the case when the caseworker left the agency in September 2001. Mansack testified that appellant failed to complete all of her case plan requirements, and failed to visit Levi. She noted that appellant had exercised only 18% of her allotted visitation. Mansack concluded that there could be little, if any, bond between appellant and Levi due to Levi's young age and the fact that appellant had not seen him in 18 months. She further testified that there is a very strong bond between Levi, his foster parents and foster sibling.
Appellant argues that Mansack's testimony should be discredited since she was not involved with the case from the onset. Although Mansack had little direct involvement with the case until September 2001, she testified that she had thoroughly reviewed the case file and had received a summary of the case from the outgoing caseworker. She also interviewed the foster parents and directly contacted appellant's case plan service providers to determine her progress. The fact that Mansack was not involved with the case from the start reflects only on the weight her testimony should be given, a determination delegated to the trial court. See In re Allen, Licking App. No. 02-CA-26, 2002-Ohio-3477, at ¶ 13. Upon review of the record, we do not find that the trial court gave her testimony undue weight.
Based on the factors in R.C. 2151.414(D) and all relevant evidence in the record, we find that there was clear and convincing evidence before the trial court that it was in Levi's best interest for WCCSB to be granted permanent custody. The testimony at the permanent custody hearing shows that appellant's bond to Levi was not strong, while he had developed a significant bond with his foster parents and was thriving in their care. Additionally, appellant failed to complete any portion of her case plan, including participation in HomeWorks, Mother's Group, and drug and alcohol abuse assessments. Appellant displayed a marked lack of interest in Levi by failing to exercise her visitation rights. Finally, Levi's guardian ad litem strongly recommended that permanent custody be granted to the state.
Based on all the evidence in the record, we find that the trial court did not err in granting WCCSB's motion for permanent custody. The assignment of error is overruled.
Judgment affirmed.
POWELL and YOUNG, JJ., concur.